# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

SEDRICK WASHINGTON,

    Plaintiff,

v.                                      Case No. 5:23-cv-123-TKW-MJF

COLE DYAS, *et al.*,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Sedrick Washington, a Florida prisoner proceeding *pro se* and *in forma pauperis*, has filed a second amended complaint under 42 U.S.C. § 1983. Doc. 13. The undersigned recommends that Washington's claims against five of the ten Defendants (Defendants Pendergraft, Fox, Suber, Fisher and Jansen) be dismissed summarily under 28 U.S.C. §§ 1915(e)(2) and 1915A, for failure to state a claim upon which relief can be granted.

I. **ALLEGATIONS OF WASHINGTON'S SECOND AMENDED COMPLAINT**

Washington is an inmate of the Florida Department of Corrections currently confined at the Mayo Correctional Institution. Doc. 13. The

incident giving rise to Washington's claims occurred at the Gulf Correctional Institution. Washington is suing ten prison officials in their individual capacities: Sergeant Cole Dyas, Officer Earl Knowbles, Officer Michael Zahn, Officer Ricky Manzingo, Officer Perry Baxley, Officer Stephanie Pendergraft, Officer Heather Fox, PRNP Pamela Jansen, APRN J.R. Suber, and APRN M. Fisher. Doc. 13 at 2-5 in ECF.[1] Washington brings an Eighth-Amendment claim against each Defendant based on the following allegations.

On July 27, 2021, at 11:00 p.m., Dyas, Knowbles, Manzingo, Zahn and Baxley entered Washington's cell. Doc. 13 ¶ 4. Dyas ordered Washington to lie face-down on the floor, and Washington complied. *Id.* ¶ 5. Manzingo handcuffed Washington. *Id.* ¶ 6. Knowbles pulled Washington up from the floor and took him into a bathroom. *Id.* ¶ 8. The bathroom was "out of view of video cameras." *Id.*

Dyas, Manzingo, Zahn and Baxley entered the bathroom. *Id.* ¶ 10. Dyas sprayed Washington with a chemical agent and "slammed" him to

---

[1] Citations to page numbers of Washington's second amended complaint are to the numbers assigned by the District Court's Electronic Case Filing system ("ECF").

the floor, assisted by Knowbles. *Id.* ¶ 11. Knowbles pulled upward on Washington's handcuffs until Washington's upper body was a few inches from the floor. *Id.* ¶ 12. Knowbles held Washington in that position as Dyas kicked Washington in the face. *Id.* Dyas, Knowbles and Zahn then struck, punched and kicked Washington all over his face, head and body. *Id.* ¶ 13. Manzingo and Baxley did not intervene. *Id.* ¶ 15. Pendergraft and Fox "watched the physical assault from the officer station." *Id.* ¶ 16.

The assault rendered Washington unconscious. *Id.* ¶ 18. Washington regained consciousness as Knowbles was bending Washington's right index toe to the point of breaking it. *Id.* ¶ 19. Knowbles then placed ankle restraints on Washington. *Id.*

Washington was dragged to the back of B-2 dormitory, "where again there were no cameras," and Dyas, Knowbles and Zahn "resumed the beating" of Washington. *Id.* ¶ 20. Manzingo, Baxley, Pendergraft and Fox "continued to watch without intervention." *Id.* ¶ 21. Washington again was rendered unconscious. *Id.* ¶ 22.

Washington regained consciousness as Knowbles was standing on the back of Washington's knees "grinding and smashing Plaintiff's knees

into the concrete." *Id.* ¶ 22. Dyas then sprayed Washington in the face with a chemical agent and stood on one of Washington's knees. *Id.* ¶ 23.

Washington was dragged to the confinement unit and placed in a shower cell. *Id.* ¶ 24. Washington was "bleeding and coughing up blood and blood clots." *Id.* Knowbles placed a spit mask over Washington's head. *Id.* Lieutenant Butler ordered Knowbles to remove the mask, and Knowbles complied. *Id.* ¶ 27. Knowbles decontaminated Washington using hot water instead of cold water. *Id.* ¶ 28.

After Washington showered, Nurse Suber conducted a pre-confinement health assessment. *Id.* ¶ 30. Suber "circled injuries on a body diagram chart, but included no specific details of the injuries or treatment thereof." *Id.* Suber did not refer Washington to a nurse practitioner, did not provide pain relief, and "refused to report the incident of staff inflicted injuries." *Id.* ¶¶ 31, 38. Washington was moved from the shower cell to a confinement cell.

The following day Washington submitted several sick-call requests. *Id.* ¶ 33. Days after that, Nurse Fisher examined Washington, documented his injuries, and referred Washington to Nurse Practitioner Jansen. *Id.* ¶ 34. Jansen prescribed antibiotics "to help with the

infection." *Id.* ¶ 37. Jansen "refused to report the abuse" that caused the injuries and "refused to send Plaintiff to outside hospital." *Id.* ¶ 36.

Washington alleges that as a result of the two beatings (in the bathroom and in the back of the dormitory) he suffered a broken toe that did not heal properly, a "knot" on the right side of his head, a chipped front tooth, a fractured nose, damage to the skin on his left knee, migraines, dizzy spells, and chronic pain in his lower back, knees and right foot. *Id.* ¶ 43.

Washington claims that Dyas, Knowbles and Zahn violated the Eighth Amendment by using excessive force on him. Doc. 13 at 16 in ECF. Washington claims that Pendergraft, Fox, Baxley and Manzingo violated the Eighth Amendment by failing to intervene in and report the other officers' excessive force. *Id.* at 18. Washington claims that Suber, Fisher and Jansen violated the Eighth Amendment by failing to report the officers' excessive force. Washington claims further that Suber and Jansen were deliberately indifferent to his serious medical needs. *Id.* As relief, Washington seeks millions of dollars in compensatory and punitive damages. *Id.* at 19.

## II. DISCUSSION

A. <u>Standard of Review under 28 U.S.C. §§ 1915(e)(2) and 1915A</u>

Because Washington is a prisoner and is proceeding *in forma pauperis*, the court is required to review Washington's second amended complaint, identify cognizable claims and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b); *see also* 28 U.S.C. § 1915(e)(2)(B) (comparable screening provision of *in forma pauperis* statute).

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8's standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).

To prevent dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The mere possibility that the defendant acted unlawfully is insufficient. *Iqbal*, 556 U.S. at 678. In applying the foregoing standard, the court accepts all well-pleaded factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).

**B.     The Claims Against Pendergraft and Fox**

Washington claims that Pendergraft and Fox violated the Eighth Amendment by failing to intervene in the excessive force by Dyas, Knowbles and Zahn, and by failing to report the excessive force after it occurred. Doc. 13 at 18.

**1.     *No Claim for Failing to Intervene***

To hold Pendergraft and Fox liable for failing to intervene in the other officers' excessive force, Washington must show that Pendergraft and Fox: "(1) [were] in a position to intervene in an ongoing constitutional

violation and (2) failed to do so." *Williams v. Radford*, 64 F.4th 1185, 1199 (11th Cir. 2023) (citing *Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000)); *see also Crenshaw v. Lister*, 556 F.3d 1283, 1293-1294 (11th Cir. 2009) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.").

Washington's allegations—that Pendergraft and Fox observed the uses of force from the Officer's Station—are insufficient to establish that Pendergraft and Fox were in a position to intervene during the uses of force. Washington concedes that neither Pendergraft nor Fox was present at the site of either assault—the force occurred in the bathroom and in the back of the dormitory; Pendergraft and Fox were stationed in the Officer's Station. *See, e.g., Williams v. Rickman*, 759 F. App'x 849, 853 (11th Cir. 2019) (defendant-officer could not be liable to failing to intervene in other officers' use of excessive force because defendant-officer was not present at the location of the force and, therefore, was not in a position to intervene).

Moreover, nothing in the complaint suggests that the Officer's Station was in close enough proximity to either location to enable

Pendergraft and Fox to determine that the force was excessive as opposed to penologically justified and, if excessive, to intervene. Also, nothing in the complaint suggests that either use of force lasted long enough to provide Pendergraft or Fox a real opportunity to intervene.

Because Washington has not nudged his failure-to-intervene claims against Pendergraft and Fox "across the line from conceivable to plausible," these claims must be dismissed. *Twombly*, 550 U.S. at 570.

2.  *No Claim for Failing to Report*

Washington's Eighth-Amendment failure-to-report claims against Pendergraft and Fox fare no better. "A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious, a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted). Second, the prison official must have a "sufficiently culpable state of mind . . . one of deliberate indifference to inmate health or safety." *Id.* (internal quotation marks omitted). This means that an official is not liable under the Eighth Amendment unless she "knows of and disregards an excessive risk to inmate health or

safety." *Id.* "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of harms exists, and [s]he must also draw the inference." *Id.* at 837.

Washington's claims fail for two primary reasons. First, even *if* Pendergraft and Fox did not report what they observed, Washington alleges no facts indicating that their failure to report the force *after-the-fact* "pose[d] an unreasonable risk of serious damage to his future health or safety." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004); *see also, e.g., Davis v. Inch*, No. 3:20cv5935-MCR-HTC, 2021 WL 2405243, at *5 (N.D. Fla. Jan. 14, 2021), *report and recommendation adopted*, 2021 WL 2401385 (N.D. Fla. Jun 10, 2021) (dismissing Eighth-Amendment failure-to-report claim for failure to state a claim "because there is no allegation Plaintiff was harmed because of the failure to report"); *Crenshaw v. Lewis*, No. 8:14-CV-1941-T-27AEP, 2016 WL 521531, at *3 (M.D. Fla. Feb. 5, 2016) (dismissing Eighth-Amendment claim because prisoner's allegation that defendants failed to report other officer's use of excessive force failed to show an "objectively sufficient serious deprivation of rights").

Second, Washington's factual allegations are insufficient to show that Pendergraft and Fox had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. There are no facts plausibly indicating that Pendergraft and Fox knew that they were exposing Washington to a substantial risk of serious harm by failing to report the uses of force after they occurred.

Because Washington fails to plead facts that allow the court to draw the reasonable inference that Pendergraft and Fox's failure to report the uses of force violated the Eighth Amendment, these claims must be dismissed. This disposes of all of Washington's claims against Pendergraft and Fox.

C. **The Claims Against Suber, Fisher and Jansen**

Washington claims that Suber, Fisher and Jansen violated the Eighth Amendment by failing to "report the deliberate and willful law violation," *i.e.,* the excessive force by Dyas, Knowbles and Zahn. Doc. 13 at 18 in ECF. In addition, Washington claims that Suber and Jansen

violated the Eighth Amendment by failing to "provide any medical response to the Plaintiff['s] serious medical needs." *Id.*[2]

### 1. *No Claim for Failing to Report*

Washington's failure-to-report claims against Suber, Fisher and Jansen fail for three reasons. First, as with Pendergraft and Fox, Washington alleges no facts indicating that the nurses' failure to make a report after-the-fact exposed Washington to an excessive risk of future harm.

Second, Washington's allegations are insufficient to show that Suber, Fisher, or Jansen had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. Washington admits that none of the nurses witnessed either use of force. Washington surmises that the nurses knew that Washington's injuries were caused by excessive force, but neither the nature nor the extent of Washington's injuries indicated that they were caused by excessive—as opposed to penologically justified—force. The nurses' failure to investigate whether the force was excessive does

---

[2] Washington does not appear to take issue with Nurse Fisher's response to his sick-call request. Washington concedes that Fisher fully documented his injuries and referred Washington to Jansen for treatment. Doc. 13 ¶ 34.

not state a plausible claim for violation of the Eighth Amendment. *See Reynolds v. Henry*, 69 F.3d 548 (10th Cir. 1995) ("A conclusory allegation of a failure to investigate without other non-conclusory allegations . . . does not constitute a cognizable claim for violations of Eighth Amendment rights.").

Moreover, even if the nurses knew that Washington's injuries were caused by excessive force, there are no facts plausibly indicating that Suber, Fisher, or Jansen knew that failing to report the incident exposed Washington to a substantial risk of future harm. In that regard it is noted that the FDC's regulations require that *the staff members involved in the use of force* complete a use-of-force report. *See* Fla. Admin. Code r. 33-602.210(9). Suber, Fisher and Jansen reasonably could have believed that the incident was reported by the staff members who used and witnessed the force.

For all of the reasons discussed above, Washington's Eighth-Amendment claims against Suber, Fisher and Jansen for failing to report the uses of force must be dismissed.

### 2. *No Claim for Medical Deliberate Indifference*

Washington claims that Nurse Suber was deliberately indifferent to his serious medical needs on the day of the beatings because Suber: (1) "circled injuries on a body diagram chart, but included no specific details of the injuries or treatment thereof;" (2) failed to refer Washington to a nurse practitioner; and (3) failed to provide Washington pain relief. Doc. 13 ¶¶ 30-31. Washington claims that Nurse Practitioner Jansen was deliberately indifferent to his medical needs "days after" the beatings because Jansen prescribed him antibiotics at sick call but "refused to send plaintiff to outside hospital." Doc. 13 ¶¶ 36-37.

"The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments.'" *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting U.S. Const. amend VIII). "[P]rison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" *Keohane*, 952 F.3d at 1265 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A medical-deliberate-indifference claim has three elements: "(1) a serious medical need; (2) the defendants' deliberate indifference to that

need; and (3) causation between that indifference and the plaintiff's injury." *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008).

With regard to the deliberate-indifference element, "a plaintiff must demonstrate that the prison officials '(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence.'" *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (quoting *Harper v. Lawrence County*, 592 F.3d 1227, 1234 (11th Cir. 2010)). Conduct that is more than gross negligence includes: "(1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011).

The causation element requires a plaintiff to show "that their injury was caused by prison official's wrongful conduct. This element requires a link between the injury and the constitutional violation." *Barcelona v. Parish*, No. 20-11229, 2021 WL 3238819, at *4 (11th Cir. July 30, 2021) (unpublished decision) (citing *Goebert v. Lee County*, 510 F.3d 1312 (11th Cir. 2007)).

As to Suber, Washington does not allege which particular injuries Suber noted but failed to treat, nor does he allege that he sought pain relief from Suber for any particular injury. Washington, therefore, has not shown that Suber subjectively was aware of pain or injuries that (1) posed a substantial risk of serious harm to Washington, (2) required additional documentation, or (3) mandated immediate referral to a physician as opposed to treatment through sick call. In addition, Washington fails to show that Suber's indifference to any injury rose to the level of more than gross negligence. Although some of Washington's injuries later became infected and required antibiotics, Washington does not allege that the risk of infection was apparent to Suber when Suber assessed Washington at the shower-cell front.

As to Jansen, Washington admits that after unspecified injuries became infected and Nurse Fisher referred Washington to Jansen, Jansen treated Washington with antibiotics. Washington does not identify any injury Jansen was aware of that required either emergency care at an outside hospital or other treatment.

In any event, as to both Suber and Jansen, the third part of the deliberate indifference analysis asks whether there was causation

between these Defendants' deliberate indifference and Washington's injury. *See Harris v. Prison Health Servs.*, 706 F. App'x 945, 950 (11th Cir. 2017) ("[B]eyond the objective and subjective inquiries, the plaintiff must show, as with any tort claim, 'causation between that indifference and the plaintiff's injury.'" (quoting *Gilmore v. Hodges*, 738 F.3d 266, 274 (11th Cir. 2013))). Washington's allegations do not indicate that Suber's or Jansen's indifference—as opposed to the uses of force themselves—caused Washington's broken toe that did not heal properly, his nose injury, his skin abrasions, the "knot" on his head, etc.

Because Washington's allegations fails to state a plausible claim of medical deliberate indifference against Suber, Fisher and Jansen, his claims against these Defendants must be dismissed.

### III. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. The claims against Defendants Pendergraft, Fox, Fisher, Jansen and Suber be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.

2.  The clerk of court be directed to terminate Pendergraft, Fox, Fisher, Jansen and Suber as defendants in CM/ECF.

3.  This case be returned to the undersigned for further proceedings on the excessive-force claims against Defendants Dyas, Knowbles and Zahn, and the failure-to-intervene claims against Manzingo and Baxley.

At Panama City, Florida, this 5th day of March, 2024.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to make recommendations regarding dispositive matters.** *See* **28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only.</u> A party must serve a copy of any objections on all other parties. A party who fails to object to this report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**